UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) ) |
| v. | ) ) |
| DAVID VILLANUEVA, | ) ) |
| Defendant. | ) ) |

HONORABLE SIDNEY H. STEIN
Docket No.:  16 Cr. 342

### DEFENDANT DAVID VILLANUEVA'S
### MEMORANDUM IN AID OF SENTENCING

ANDREW C. QUINN, ESQ. [4059]
The Quinn Law Firm, PLLC
Attorney for DAVID VILLANUEVA
399 Knollwood Road, Suite 220
White Plains, NY  10603
(914) 997-0555

> *There is no person so severely punished, as those who subject themselves to the whip of their own remorse.*

- Lucius Annaeus Seneca

Now comes the Defendant, David Villanueva, by and through counsel, Andrew Quinn, Esq., and respectfully submits this Memorandum in Aid of Sentencing.

## 1. Introduction

Defendant David Villanueva ("Mr. Villanueva"), a former police sergeant in the New York City Police Department, is a devoted husband and father of four (4) children.  Mr. Villanueva dreamed of being a police officer from an early age, and made his family proud by applying his signature work ethic to achieving that end.  However, through his own fault, he ultimately tarnished that dream, as well as his hard-earned his reputation, by engaging in a bribery scheme within the New York Police Department's Pistol License Division ("License Division").   Mr. Villanueva fully accepts responsibility for his actions -- as evidenced by his plea of guilty and his extensive cooperation with the government - and is prepared to accept the punishment that this Court will impose. However, we respectfully request that the Court consider the extraordinary level of assistance provided by Mr. Villanueva to the Government in its investigation and prosecution of additional targets of criminal activity related to corruption in New York Police Department's Pistol License Division, and take stock of the character traits that have defined his devotion to his family.

Mr. Villanueva has long been admired by those close to him as first and foremost a man dedicated to the well-being of his family.  The support letters that accompany this Memorandum[1] provide abundant detail about Mr. Villanueva's extraordinary generosity, compassion and commitment to members of his family and community. Since his public arrest in 2016, Mr.

---

[1] We have attached letters in support of David Villanueva from family members, friends, loved ones, members of his community, and former colleagues.

1

Villanueva, through his own actions, has endured the loss of his job with the New York City Police Department that he cherished, has incurred significant financial hardship, and has suffered the humiliation and dishonor of the ongoing criminal investigation.  This investigation, guilty plea and subsequent cooperation with the government has taken an extraordinary toll on his family and caused Mr. Villanueva to recommit to his duties as a husband and father.  Despite his very public fall from grace, he has procured a good job and, due to his unfailing work ethic, has flourished and hopes to be promoted soon. Mr. Villanueva and his family are currently presented with significant financial difficulties, which he is working hard to overcome, and which would only be exacerbated if he were not free to provide for his family.

Like many other police officers, David Villanueva was working on September 11, 2001; unlike many other police officers, David was only a few blocks away when the first Tower was struck. Putting fear aside, he rushed to the site of the Plaza, thinking at the time that it was a tragic accident. Upon arrival, he found many people running afraid; he began directing New Yorkers away from the Plaza, moving pedestrian traffic away due to falling debris. He was directing pedestrian traffic when the second plane struck above him. Realizing that the Towers and the City were under attack, then-Officer Villanueva hurried hundreds of commuters and occupants of Tower Two from the area. He was directing people away when the Towers collapsed: he is responsible for moving hundreds of civilians from the area before the collapse. After the Towers fell, he stayed with dozens of dust-covered citizens, providing water, directions and comfort while looking for a safe haven for those affected. He then rushed to the Plaza and began a seventeen hour search and rescue, looking for survivors. He remained at Ground Zero until he was ordered to go home. He hitchhiked over the Williamsburg Bridge, went home for eight hours, and returned to Ground Zero, where he spent another sixteen hours performing search and rescue efforts: David

worked every other day at Ground Zero for one full year after the attack. He placed the needs of his family and his health behind his desire to help those who were killed and missing. We believe that his actions during this terrible time are significantly more illustrative of Mr. Villanueva's character than his later actions, and ask the Court to give great weight to his effort in 2001.

Mr. Villanueva's acceptance of responsibility and genuine remorse for his actions, along with his extensive cooperation with the Government, demonstrate that his risk to reoffend is considered low, and we believe, nonexistent. Indeed, Mr. Villanueva has spent countless hours of time, both before and after his plea, in an effort to make amends for his actions. He has worked diligently with the government to rid the Licensing Division of corrupt employees and practices, and was instrumental in bringing other co-conspirators to justice. We believe a fair consideration of all of these factors compels the conclusion that a non-custodial sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

We urge this Court to consider Mr. Villanueva's many years of public service, his extensive cooperation with the Government, and his devotion to his community, his family and his friends, as well as the impact a sentence of incarceration will have on his ability to care for and support his wife and four children. A non-custodial sentence will permit Mr. Villanueva to remain at home and provide for his devastated family, allow him to work to make amends for his actions, and allow him to remain a loving husband to his wife Jessica and caring father to their four children.

## 2. Procedural History and Facts

The Defendant David Villanueva (hereinafter "Mr. Villanueva"), was arrested on June 20, 2016 and charged by sealed indictment S2 16 Cr. 342 (SHS). He was released on the same day on a $200,000.00 Personal Recognizance Bail. On February 3, 2017, Mr. Villanueva pled guilty to

superseding information S4 16 Cr. 342 (SHS) on the following charges: (Count One) one count of conspiracy to commit federal program bribery, in violation of 18 U.S.C. § 371; (Counts Two through Five) four counts of federal program bribery, in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2; and (Count Six) one count of making a false statement, in violation of 18 U.S.C. § 1001. On April 25, 2017, Mr. Villanueva plead guilty to the above charges.

For the purposes of sentencing, Mr. Villanueva accepts his guilt, and is prepared to accept the punishment that this Court will impose.

### 3.   Presentence Investigation Report

The Presentence Investigation Report (hereinafter the "PSI"), prepared by the United States Probation Office on January 29, 2019, calculated the advisory guideline level as follows:

**a.**   USSG §2C1.1(a)(1) Base Offense Level

The Probation Office applied their interpretation of facts to reach a total offense level of twenty-five (25), a determination that would result in a sentence of 57 to 71 months. The imposition of such a lengthy sentence does not accurately reflect the acceptance of responsibility and degree of cooperation exhibited by Mr. Villanueva.

**b.   Analytical Framework**

As the Court is undoubtedly aware, on January 12, 2005 the United States Supreme Court inexorably altered the doctrinal landscape of federal sentencing with its decisions in *United States v. Booker,* 543 U.S. 220 (2005). The Court in *Booker* made it clear that United States District Courts are no longer bound or restricted by a mandatory and unwavering application of the United States Sentencing Guidelines.

When sentencing a defendant, the court must consider the applicable Guidelines offense level, which is advisory, and the factors enumerated in Title 18, United States Code, Section

3553(a).[2]  *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Corsey*, 723 F.3d 366, 374 (2d Cir. 2013).  The sentence imposed must be "sufficient, but not greater than necessary" to comply with the purposes set forth in Section 3553(a)(2). 18 U.S.C. § 3553(a).  The "enhanced scope of a sentencing judge's discretion in the post-Booker world of advisory Guidelines" permits a sentencing court to consider:

> the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.  *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

Therefore, while the court must consider the Section 3553(a) factors, it has discretion to impose a non-Guidelines sentence based on factors not specifically articulated in Section 3553(a), as long as the resulting sentence is reasonable. 18 U.S.C. § 3553(a)(1); *Gall v. United States*, 552 U.S. 38, 49-51 (2007).  Applying the factors enumerated in Title 18, United States Code, Section 3553(a), it is apparent that a non-custodial sentence is "sufficient, but not greater than necessary" in this case. We respectfully request that the Court sentence Mr. Villanueva to a non-custodial

---

[2] Section 3553(a) provides that when sentencing a defendant, the court must consider a number of factors:
(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  the need for the sentence imposed –
    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)  to afford adequate deterrence to criminal conduct;
    (C)  to protect the public from further crimes of the defendant; and
    (D)  to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.
(3)  the kinds of sentences available;
(4)  the kind of sentence and the sentencing range established for --
    (A)  the applicable category of offense committed by the applicable category of the defendant as set forth in the Guidelines – (i) issued by the sentencing commission . . .;
(5)  any pertinent policy statement
    (A) issued by the sentencing commission . . .;
(6)  the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)  the need to provide restitution to any victims of the offense.

sentence in light of the factors set forth by Section 5K1.1[3] of the Sentencing Guidelines and 18 U.S. Code § 3553(a) and § 3553(e)[4].

### c. Offense Characteristics

Initially, it must be stated that neither counsel, Mr. Villanueva, nor his family, seek to underestimate or downplay the nature, severity nor gravity of the crimes for which he stands charged. Regardless of the motivation, exculpatory or explanatory factors involved, if any, no one can escape the conclusion that Mr. Villanueva plead guilty to violating 18 U.S.C. § 371, 18 U.S.C. §§ 666(a)(1)(B) and 2, and 18 U.S.C. § 1001. Moreover, no one can seriously suggest that this is not a severe offense. Mr. Villanueva appreciates the societal impetus for ensuring that those who swear an oath to serve and protect remain unwavering in honoring that social contract.

That being said, it is doubtful that Mr. Villanueva could have done more in an effort to right his wrongs and make amends for his criminal behavior than he has: he testified publicly at media-soaked trials against two fellow conspirators, and he was instrumental in assisting the government in apprehending and convicting several others. As noted extensively in the government's submission, Mr. Villanueva was an exemplary witness, spending hundreds of hours

---

[3] 18 USCS Appx § 5K1.1 Substantial Assistance to Authorities
Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
(a)  The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
(1)  the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
(2)  the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3)  the nature and extent of the defendant's assistance;
(4)  any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5)  the timeliness of the defendant's assistance.
[4] 18 U.S. Code § 3553 (e) Limited Authority To Impose a Sentence Below a Statutory Minimum.—
Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

attending dozens of meetings in an effort to atone for his crime, aiding the government in myriad ways, including the identification of others within and without the license division who had committed crimes; procuring evidence to substantiate his information; identifying gun license holders whose privileges needed to be reconsidered and, often, revoked; and assisting the government's efforts to root out the pervasive and corrupt practices at the gun licensing division, thereby leading to necessary reforms.

### d.  Personal Background

Mr. Villanueva was born on March 8, 1974 in Brooklyn, New York to his parents Luis Villanueva and Rosa Villanueva nee Rosario.  He grew up in a strong and loving family environment in what was a drug and crime-addled neighborhood in East New York.  Despite the difficult surroundings, he stayed out of trouble, had a very close relationship with his family, and dreamed of one day becoming a police officer.

The primary focus and main source of pride and joy for Mr. Villanueva is, and has always been, his family.  Mr. Villanueva is married to his wife Jessica and together they have four children.[5]  Mr. Villanueva is father to a seventeen-year old son, two thirteen-year old daughters, and a fourteen-month old son.  Mr. Villanueva has always made it his life's work to provide for his children, and the result of his recent indictment and guilty plea has had a severe effect on both the family's financial situation[6], as well as the emotional states of each of the young children.  As the primary breadwinner for the children, his absence would understandably leave a giant void in what was once a vibrant and supportive home environment.

---

[5] Mr. Villanueva has two children with his first wife, a step-daughter of his current wife Jessica, and an infant son with Jessica.
[6] Despite his extreme financial difficulties, as outlined in the presentence investigation report, Mr. Villanueva continues to pay child support to his ex-wife, often paying more than he owes.

Mr. Villanueva's presence in his wife and kids' lives is vital to their core functionality and growth as a family. Any lengthy term of imprisonment would unquestionably cause significant and potentially irreparable harm to the growth and development of his children.

Mr. Villanueva is a devout Christian who attends Mass weekly with his family at God's Embracing Ministries, where he is admired and respected in the Church. According to a letter of support written by Dr. Pastor Victor Perez, Mr., Villanueva has "demonstrated that he can overcome adversity by the way he is now living his life. He has shown himself to be an honest and loyal person, witnessed by my church members and I".

As evidenced by the outpouring of love and support from his friends and family in the annexed character letters, we are not sentencing some kingpin or lowlife, but rather a good man, a family man, who made a mistake, while remaining a high functioning and otherwise law-abiding member of society. Mr. Villanueva is forty-five (45) years old and for the benefit of his children, in keeping with their best interests, and wife, the Court is urged to exercise its just discretion in imposing a sentence grounded in leniency, and not greater than necessary, so that this once thriving young family can get back to being whole again.

### e. History and Character of the Defendant

As stated *supra* and evidenced by his lifetime of public service and devotion to his family, Mr. Villanueva has been an upstanding citizen, friend, and father. Coming from a rough neighborhood in East New York, he successfully joined the NYPD and built a family that any man could be proud of. In the time since his guilty plea, Mr. Villanueva has had ample time for the kind of reflection and introspection that only those who face the prospect of losing all that is dear to them can experience. This self-evaluation is critical in that it serves as indicia of the type of

citizen that Mr. Villanueva intends to be if once again afforded the great privilege and opportunity to remain home with his children and rekindle his contract to society.

It is inordinately clear that Mr. Villanueva is a very special friend and relative. What jumps off the pages of his character letters is that Mr. Villanueva is an ethical, trustworthy, loving, caring and dedicated individual -- that made an uncharacteristic error in judgment. We ask the Court to consider these factors, along with his extensive cooperation with the Government, and depart from the sentence called for by the advisory guideline range.

Additionally, Mr. Villanueva has been the primary provider for his family prior to his arrest and has four children, one of whom is on the way to college; he is certainly the backbone of his family's finances. Although, Mr. Villanueva and his counsel recognize that it was his own actions that created these collateral consequences, we ask the Court to consider the negative effect any prison sentence will have on innocent third parties, namely his wife and four children.

## CONCLUSION

For all of these reasons stated, we respectfully request that the Court sentence David Villanueva to a sentence that does not include incarceration, and allow him to continue to return to his life as a father, husband and law-abiding citizen.

Dated: May 29, 2019
White Plains, New York

Respectfully submitted,

Andrew C. Quinn, Esq.
The Quinn Law Firm, PLLC
ATTORNEYS FOR DEFENDANT
DAVID VILLANUEVA
399 Knollwood Road, Suite 220
White Plains, NY 10603
914-997-0555